47 F.3d 1173
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Mark McMASTER, Plaintiff-Appellant,
v.
Donna E. SHALALA,[2] Secretary of Health and
Human Services, Defendant-Appellee.
 No. 93-1592.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 9, 1995.[1]
Decided Feb. 14, 1995.
 
 Before BAUER, COFFEY and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 Mark McMaster appeals from a district court order affirming the Secretary's determination denying all supplemental security income and disability insurance benefits. McMaster's application for benefits alleged disability since May 21, 1987, caused by a combination of impairments suffered as a result of a car accident, including weakness in his right arm, a degenerative neck disease, post-concussion syndrome, severe headaches, memory problems, and related neurological and psychological problems. An ALJ found that McMaster was not entitled to benefits because he retained the residual functional capacity to perform the full range of sedentary work. The Appeals Council reversed and remanded for additional testimony from a vocational expert. After the supplemental hearing was held, the ALJ again found McMaster was not entitled to benefits. The Appeals Council denied McMaster's request for review of the ALJ's decision. The district court granted the Secretary's motion to affirm.
 
 
 2
 McMaster contends on appeal to this court that an incorrect burden was imposed; the Secretary's decision is not supported by substantial evidence; evidence of a mental impairment was not properly considered; the Secretary and district court used the wrong legal standard in considering mental and pain impairments; and the Secretary and district court improperly gave more weight to the opinion of a non-examining physician than to the report of a treating physician.
 
 
 3
 For the reasons stated in the attached district court Memorandum and Order dated February 22, 1993, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 4
 Mark McMaster, Plaintiff,
 
 
 5
 v.
 
 
 6
 Louis M. Sullivan, M.D., Secretary for the Department of
 
 
 7
 Health and Human Services of the United States of
 
 
 8
 America, Defendant.
 
 Case No. 91-4092
 ORDER
 
 9
 MIHM, Chief Judge.
 
 
 10
 Pending before the Court is Plaintiff's Motion to Reverse and Remand, and Defendant's Motion to Affirm. For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Reversal or Remand and grants Defendant's Motion to Affirm.
 
 PROCEDURAL BACKGROUND
 
 11
 The claimant originally filed applications for benefits on June 26, 1988, alleging disability since May 21, 1981. After initial denial and reconsideration, a hearing was held on March 17, 1989. The Appeals Council then remanded the case to accommodate the additional testimony of a vocational expert for a step 5 analysis (Tr. 13). The supplemental hearing was held November 27, 1990. In a decision dated March 13, 1991, ALJ Johnson denied Plaintiff's claim for benefits (Tr. 13-25). ALJ Johnson's decision became the final decision of the Secretary when the Appeals Council denied further review on September 20, 1991 (Tr. 5-6). Plaintiff then commenced this action seeking judicial review of the Secretary's final decision.
 
 FACTUAL BACKGROUND
 
 12
 Plaintiff was born on October 16, 1954. He graduated from high school in 1973. He completed about one and one-half years of college and served in the military as a teletype technician (Tr. 109-110, 235). He has worked as a soda pop vending machine repairman and as an avionics technician (Tr. 111-14, 235, 274).
 
 
 13
 On May 21, 1987, McMaster's pick-up truck hit a deer. During the accident, Plaintiff apparently struck his head on the steering wheel (Tr. 246-263). Since that time, Plaintiff has been unsuccessful in securing regular work. From May through November of 1987 he attempted to help his fiance operate a self-service car wash by collecting money from the payment box (Tr. 74-75, 221-22). In 1988, he attempted to return to work as an avionics technician but was unable to pass the physical (Tr. 73-74).
 
 
 14
 Immediately following the accident, McMaster was admitted to Moline Public Hospital (Tr. 243). He was diagnosed as having a concussion, a cervical sprain, and right arm weakness. However, Dr. Gardner, the examining physician, noted that McMaster could move his neck well and that a CT scan of the head and cervical spine x-rays, thoracic spine x-ray and chest x-ray were all normal, though he noted some tenderness in certain muscles. Dr. Berge, Department of Radiology, reported that although there is a slight bend to the left possibly on the basis of muscle spasm, McMaster had an "essentially normal cervical spine." "I see nothing that looks like traumatic injury ... essentially normal thoracic spine." (Tr. 249).
 
 
 15
 Plaintiff subsequently complained of headaches, memory loss, and weakness and loss of sensation in his right arm. His treating doctor, Dr. Udehn, a neurologist, diagnosed Plaintiff as suffering from brachial plexus injury, cervical strain, and occipital neuralgia. Plaintiff was treated with bilateral occipital trigger injections, physical therapy, pain relievers, and muscle relaxers (Tr. 260-61). A CT scan of the Plaintiff's brain on June 25, 1987 revealed no abnormalities (Tr. 262).
 
 
 16
 McMaster underwent a medical evaluation at the Mayo Clinic from June 29 through July 2, 1987. Dr. Dittes reported that McMaster was a "healthy appearing white male in no distress." He noted mild discomfort with the range of motion of the neck and upper spine and some mild tenderness of the neck musculature. He also reported some mild weakness of the muscles of the right upper extremity diffusely. Dr. Dittes reported that all reflexes were within normal limits although there was mild clumsiness of the right upper extremity during rapid movements. Dr. Dittes reported that after a consultation with Dr. F.M. Howard, Jr., Department of Neurology, "it was felt that the motor abnormalities of the upper extremity were not consistent with a plexopathy or neuropathy and likely had a significant functional component (functional refers to disturbances of function with no organic cause. See Defendant's brief p. 3). Dr. Dittes felt that McMaster's symptoms "will likely resolve with time." He was advised to "consider returning to work in coordination with the local physicians as his symptoms allowed it." (Tr. 278).
 
 
 17
 In May 1988, Dr. Udehn stated that, while Plaintiff still suffered from headaches, he was gradually improving and his hand had less tremor in it (Tr. 253). In the spring of 1989, Dr. Udehn updated Plaintiff's diagnosis as cervical radicular syndrome, status post brachial plexus injury, and post concussive syndrome. Dr. Udehn reported that McMaster appeared to be disabled at that time. In May 1990, McMaster had a magnet resonance imaging (MRI). This MRI supported Dr. Udehn's diagnosis of mild degenerative joint disease in the neck (Tr. 282-83). The MRI report noted that "there is some bulging of the disc at C5-6 and C6-7 ... primarily on the right side, particularly at C5-6." The report noted "some apparent encroachment of the intervertebral neural foramen on the right side at C5-6."
 
 
 18
 In June of 1990, McMaster was examined by Dr. Sanguino, a neurologist (Tr. 292). Dr. Sanguino reviewed McMaster's medical history and noted that the Mayo Clinic concurred with Dr. Udehn's diagnosis that McMaster had suffered a brachioplexis injury (Tr. 292). Dr. Sanguino's examination revealed no abnormality in the head. The cervical spine revealed that there was some restriction of motion involving the trapezius muscles and side ways. He detected some weakness of the right hand, difficulty with fine finger grasping and movements and there was decreased sensation noted in the right hand. Dr. Sanguino diagnosed that McMaster had a "residual of the previous head injury, post-concussion syndrome with memory loss." He also noted "a residual from the previous cervical spine sprain and brachioplexis injury, which since has improved." (Tr. 293).[1]
 
 
 19
 McMaster was also examined by a psychologist, Dr. Dhanens, and a psychiatrist/neurologist, Dr. Solis. Dr. Dhanens examined and tested McMaster on the basis that the issue of McMaster's cognitive functioning was more important than his personality or vocational interests, given McMaster's clear interest in staying in his previous field of avionics. In general, Dr. Dhanens opined that McMaster was experiencing a mild Adjustment Disorder with some depressive features as a result of his situation. His intelligence tested at the dull-normal range. His intellectual functioning was found to be lower than it had been prior to the head injury. McMaster scored below average on the Minnesota Clerical Test and the "Rey's AVLT" Test (audio/verbal learning). Dr. Dhanens diagnosed McMaster as showing an "organic brain syndrome taking the form of dementia, that is, he demonstrates a rather diffuse, generalized loss in mental efficiency, as well as "an adjustment disorder with mild depression." (Tr. 267). The doctor suggested that he brush up on his previous job skills and attempt to do some sort of electrical, mechanical maintenance or repair work. "I do feel he should be competitively employable in some area relating to his past work at a somewhat lower or less technical level." (Tr. 267).
 
 
 20
 Dr. Solis interviewed McMaster for approximately 45 minutes and conducted memory and abstract thinking exercises. His diagnoses was an "adjustment disorder with mixed emotions, mild" and "post-status brachial plexus injury, cervical strain, and occipital neuralgia." Dr. Solis stated, "it seems that he experienced anxiety and a great deal of frustration over his present limitations," but there is no evidence of organic brain syndrome (Tr. 271).
 
 
 21
 In June of 1990, McMaster was evaluated again by Dr. Dhanens (Tr. 296). McMaster's performance in 18 various neuropsychological tests was within the normal or below average range with the exception of the constructional praxis test, in which McMaster scored lower on some things than he did in 1988 and higher on others. "I do not understand any clinical basis for this change in scores. Normally, we would expect marked scores to remain stable or improve over time post-injury." (Tr. 299). Dr. Dhanens noted that the MMPI profile appeared to be "valid" and showed significantly high neurotic scales. This "indicates a strong predisposition toward hysterical conversion disorder." Dr. Dhanens determined that if a physician were to state definitely that there was no medical basis for McMaster's headaches, a diagnosis of conversion disorder would be appropriate (Tr. 301). Whether the headaches are physical or emotional/functional, Dr. Dhanens regarded this problem as treatable and not a vocationally disabling condition. He supported McMaster's vocational rehabilitation efforts and felt that placing McMaster on permanent disability would be counterproductive.
 
 
 22
 The testimony of McMaster, his mother, and his fiance establish that McMaster suffers from frequent and sometimes debilitating headaches. He takes medication which dulls his ability to concentrate. He testifies that he is unable to sit for one hour or stand for two hours. He often lies down to alleviate the pain. This testimony is corroborated by his teacher at Blackhawk College, who indicated that McMaster's attendance was sporadic, he had neck pains and complained of headaches, and was so drowsy in class that she would suggest that he go home. She also mentioned that he was only able to study for short periods of time (Tr. 275). A letter by Wanda Hartman, a Learning Skills Specialist at Blackhawk College, noted problems with McMaster's short-term memory. She also observed that McMaster often seemed to be in pain and could not sit still for long periods of time. She also concurred that the various medications which McMaster took to alleviate the pain made him appear sedated, unresponsive, and slow to react both physically and mentally. She stated that she felt confident that McMaster would be able to complete his training if he was given enough time and if his medical condition stabilized (Tr. 291). Eventually (June 1990), McMaster was advised by his counsel to drop out of school because of his inability to keep up with his school work (Tr. 130, 295).
 
 
 23
 During the November 27, 1990 hearing, a vocational expert, Mr. Paprocki, testified in response to hypotheticals given to him by the ALJ. Under the first hypothetical, which mirrored the ALJ's residual functional capacity finding in his decision, Mr. Paprocki found that jobs existed in the national and local economy for which Plaintiff is qualified, including a reviewer or checker of documents, a product proofreader, and a security guard (Tr. 145-46). When the ALJ gave the vocational expert a second hypothetical, which included the subjective limitations testified to by McMaster, his mother and his fiance, the vocational expert testified that there were no jobs in the economy for which the Plaintiff would be qualified.
 
 
 24
 In a very thorough decision, the ALJ found that the testimony of the claimant on the subject of his subjective complaints was exaggerated and not fully credible as they were not supported in the record by objective medical evidence which would reasonably support such complaints. See Tr. 20-21, Social Security Rule 88-13 (July 1988). The ALJ further found that McMaster had the residual functional capacity for the full range of light or sedentary work reduced by the following limitations:
 
 
 25
 Except for lifting and carrying more than 50 pounds occasionally and 25 pounds frequently; any repetitive bending of the trunk and neck, or repetitive twisting of the neck; more than occasional climbing of ladders due to balance problems; continuous fine rapid manipulation with the right hand; continuous working overhead; working around heights or moving machinery; and any complex, technical work requiring math computations or close attention to detail. The claimant cannot work at a job with a stress level of 5 or above on a scale of 1 to 10 with 10 being the highest. 20 C.F.R. 404.1545, 416.945.
 
 
 26
 Tr. 24-25. Although the ALJ found claimant unable to perform his past relevant work as an avionics technician, he found jobs exist in significant numbers in the national economy that McMaster can perform. Therefore, under 20 C.F.R. 404.1520(f) and 416.920(f) the ALJ found McMaster not disabled under the Social Security Act (Tr. 25).
 
 DISCUSSION
 
 27
 42 U.S.C. Sec. 405(g) provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 401 (1971). A reviewing court may not decide the facts de novo, reweigh the evidence, or substitute his judgment for that of the Secretary. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986).
 
 
 28
 Plaintiff argues that the ALJ's decision was not supported by the manifest weight of the evidence. Plaintiff relies heavily on Dr. Udehn's records and the vocational expert's testimony regarding the ALJ's second hypothetical and the attorney's first hypothetical (based on McMaster's subjective complaints). Plaintiff also points to two factual references in the ALJ's findings regarding Plaintiff's ability to sit in the classroom, "an activity that involves concentration, memory function, etc." (Tr. 22), and Plaintiff's testimony not being consistent with the symptoms of migraine headaches (Tr. 22).
 
 
 29
 Regarding Plaintiff's arguments on the ALJ's findings regarding Plaintiff sitting in class and complaining of migraine headaches, the Court finds that the facts offered by Plaintiff to counter these findings, while illuminating evidence in the record which qualifies or challenges the ALJ's observations, do not establish that the ALJ's findings are not supported by substantial evidence in the record. Furthermore, these points are relatively minor and do not effect the substantial evidence relied upon by the ALJ in reaching his decision.
 
 
 30
 Plaintiff argues that the ALJ's findings were erroneous regarding the existence of jobs in the national economy because the vocational expert testified that claimant would not be qualified for any job in the economy based on the ALJ's second hypothetical. However, it is clear that the ALJ chose to adapt the vocational expert's response to hypothetical 1 because the facts contained in hypothetical 1 were analogous to what the ALJ found to be the claimant's residual functional capacity ("RFC"). The ALJ did not include McMaster's subjective complaints as limitations in his RFC finding because he found McMaster's complaints incredible or exaggerated due to a lack of support from the objective medical evidence in the case. This Court is not free to reassess the ALJ's credibility finding unless it finds clear error. Although McMaster's complaints were corroborated by the testimony of McMaster's mother and his fiance, and evidence provided by Blackhawk College, this evidence does not establish clear error in light of the medical evidence in the record. The ALJ's credibility finding must stand. Therefore, the ALJ's adoption of hypothetical 1 and the vocational expert's response thereto was supported by substantial evidence in the case.
 
 
 31
 Plaintiff argues that Dr. Udehn, McMaster's treating doctor, must be given deference over examining doctors. Therefore, the ALJ erroneously weighed other medical evidence more heavily than Dr. Udehn's diagnosis or opinion that McMaster was disabled. The Court disagrees. In Stephens v. Heckler, 766 F.2d 284, 288-89 (7th Cir.1985), the Seventh Circuit stated that the Secretary's delegate (the ALJ) is free to weigh the relative merits of the opinions presented by consulting specialists on the one hand, and treating physicians on the other hand, subject only to substantial evidence rule. In the instant case, the consulting experts actually examined Plaintiff and took the time to write factual reports. After several examinations and tests over time, none of these experts diagnosed McMaster's condition as disabling. In fact, the record includes one expert's recommendation that putting him on permanent disability would be counterproductive. The Court finds that the record substantially supports the ALJ's evaluation of the medical evidence in this case and his related findings.
 
 
 32
 In his reply brief, McMaster argues that the ALJ failed to consider Plaintiff's serious mental disorders as reported by Dr. Dhanens's finding of organic brain syndrome (Tr. 267 and Defendant's brief p. 5) and/or the diagnosis of conversion disorder, both of which can be disabling. Therefore, Plaintiff argues that an omission from the RFC of the observed mental disorders is not supported by the substantial weight of the evidence.
 
 
 33
 The Court finds that the ALJ adequately considered the medical reports and evidence which addressed McMaster's potential mental/emotional limitations and address them expressly in his opinion. See Tr. 17, 18, 20-21. The medical evidence indicates that McMaster suffers from symptoms which are either caused by physiological impairment or a mental disorder. However, the medical evidence also establishes that he is not incapacitated by these symptoms, regardless of their origin, to an extent which would preclude employment consistent with McMaster's residual functional capacity.
 
 CONCLUSION
 
 34
 For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Reversal or Remand and GRANTS Defendant's Motion to Affirm. The Clerk is directed to enter judgment in this case.
 
 
 35
 ENTERED this 22nd day of February, 1993.
 
 
 36
 /s/ Michael M. Mihm
 
 Michael M. Mihm
 Chief United States District Judge
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir R. 34(f). No such statement having been filed, the appeal is submitted for decision on the briefs and the record
 
 
 [2]
 Donna E. Shalala has been substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)
 
 
 [1]
 Post-concussive syndrome (or post-concussion syndrome) is a complex of symptoms caused by an injury to the head, i.e., by concussion. It is marked by headache, dizziness, subjective head noises, insomnia, irritability, over-reaction to stimuli, etc. (Defendant's brief p. 4, n. 6)